IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–01281–EWN

DONNA SIMMONS,

      Plaintiff,

v.

JO ANNE BARNHART, Commissioner of
Social Security,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a social security benefits appeal under 42 U.S.C. § 405(g).  Plaintiff Donna M. Simmons challenges the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Social Security Disability Insurance benefits. Jurisdiction is based on 42 U.S.C. § 405(g) (2006).

## FACTS

### 1.    *Medical Evidence*

      Plaintiff was born on February 13, 1943, and was fifty-nine years old at the onset of her alleged disability.  (Admin. R. at 60 [filed Oct. 5, 2005] [hereinafter "Admin. R."].)  Plaintiff completed high school and obtained certificates in both licensed practical nursing and wastewater management.  (*Id.* at 194–95.)  Plaintiff worked as a licensed practical nurse in the vocationally

relevant past. (*Id*. at 68.) Plaintiff alleges that she became unable to work beginning on May 31, 2002 due to symptoms associated with fibromyalgia and chronic fatigue syndrome.[1] (*Id*. at 67.) Specifically, Plaintiff asserts that: (1) her medical conditions caused her to feel severe foot pain when standing or walking; and (2) she experienced minor memory loss. (*Id*.)

### a. Medical Evidence from Plaintiff's Treating Physicians

Plaintiff's earliest medical records date from February 17, 2000, when she visited D. Lembitz, M.D. (*Id*. at 146–47.) Plaintiff complained of pain, which she felt mostly in her feet. (*Id*. at 146.) Plaintiff reported that she took Naprosyn for pain. (*Id*.) On exam, Dr. Lembitz noted Plaintiff weighed 177 pounds and had multiple fibromyalgia trigger points throughout her body. (*Id*.) The doctor found "no tenderness . . . on [Plaintiff's] feet to palpitation though [she] says with walking and standing her feet are very sore." (*Id*.) Dr. Lembitz noted Plaintiff's history was consistent with fibromyalgia, triggered by shoulder surgery in 1986. (*Id*. at 146–47.)

On March 7, 2002, Michael Towbin, M.D. examined Plaintiff. (*Id*. at 132–33.) Plaintiff presented with a history of fibromyalgia with "all-over body pain" that had caused her to cut back her hours at work. (*Id*. at 132.) Plaintiff reported that her illness dated back to a bout of Asian flu she suffered when she was fourteen. (*Id*.) She also stated that she spent eight months in bed

---

[1]Fibromyalgia is a rheumatic disease marked "by dull and persistent pain, tenderness, and stiffness of (1) muscles, (2) regions where tendons are inserted into bones, and (3) nearby soft tissues. These symptoms can be due to overuse of muscles or be secondary to another, underlying disorder." 2–F Attorneys' Dictionary of Medicine 1790 (Matthew Bender 2005). Chronic fatigue syndrome is a disorder characterized "by severe, functionally impairing, and unexplained fatigue of new onset that is not due to exertion and not alleviated by rest." 2–CH Attorneys' Dictionary of Medicine 1744 (Matthew Bender 2005).

in 1986 after developing strep throat and mononucleosis.  (*Id.*)  Plaintiff stated that she felt very

stiff in the morning and after sitting for long periods.  (*Id.*)  Plaintiff reported that her condition

had caused her to gain forty pounds from 1999 to 2002.  (*Id.*)  Dr. Towbin's notes indicate that

Plaintiff weighed 183 pounds.  (*Id.* at 133.)  On examination, Dr. Towbin found multiple tender

points throughout much of Plaintiff's body, including tenderness in her foot.  (*Id.*)  Dr. Towbin

assessed "a history of fibromyalgia," but observed that Plaintiff "does not seem to have chronic

fatigue."  (*Id.*)  Dr. Towbin gave Plaintiff samples of Celebrex.[2]  (*Id.*)

On March 20, 2002, Plaintiff again visited Dr. Towbin.  (*Id.* at 131.)  Plaintiff informed

him that Celebrex was ineffective and requested a new prescription for Naprosyn.  (*Id.*)  Plaintiff

also complained of migraines and requested that Dr. Towbin perform acupuncture, which the

doctor performed.  (*Id.*)  Dr. Towbin assessed "chronic pain syndrome with fibromyalgia" and

prescribed Naprosyn as well as an herbal medicine.  (*Id.*)

On June 5, 2002, Plaintiff returned to Dr. Towbin.  (*Id.* at 130.)  Treatment notes state

that Plaintiff had resigned from her job and planned to apply for disability benefits.  (*Id.*)  Plaintiff

reported that she was "able to work an almost-[eight]-hour day" as a nurse, but then suffered such

exhaustion and pain during the "next couple of days that she simply [could] not work."  (*Id.*)

Plaintiff reported that she did not sleep well and mentioned that her husband snored and her

neighbor owned a "loud barking dog."  (*Id.*)  Plaintiff indicated that she was unable to work a

five-day work week, but she might have been able to work a two- or three-day week.  (*Id.*)  Dr.

---

[2]Celebrex is used to treat "osteoarthritis and rheumatoid arthritis."  1–C Attorneys'
Dictionary of Medicine 2934 (Matthew Bender 2005).

Towbin noted Plaintiff was "generally well-appearing, in no distress." (*Id.*) Re-examination

revealed multiple bilateral tender points. (*Id.*) Dr. Towbin assessed fibromyalgia and chronic

fatigue syndrome, and prescribed Amitriptyline, a sleeping aid. (*Id.*) Dr. Towbin opined that

Plaintiff was "currently disabled and unable to perform a job working [five] days a week." (*Id.*)

On July 5, 2002, Plaintiff returned to Dr. Towbin for further consultation on chronic

fatigue. (*Id.* at 129.) Dr. Towbin indicated that lab tests showed normal antinuclear antibodies

and a normal rheumatoid factor. (*Id.*) Dr. Towbin noted Plaintiff was "generally well appearing."

(*Id.*) Dr. Towbin noted Plaintiff had been "very forgetful, with brain dysfunction" ever since her

protracted illness in 1986. (*Id.*) He also noted Plaintiff's "fatigue, pain, forgetfulness, and

inability to concentrate" contributed to her decision to quit her job. (*Id.*) Plaintiff reported that

Amitriptyline had helped some with her sleeping problems, and Dr. Towbin increased her dosage.

(*Id.*)

On June 13, 2003, Plaintiff returned to Dr. Towbin, complaining that she was worsening.

(*Id.* at 127.) Plaintiff also reported that her pain medication, Naprosyn, was upsetting her

stomach. (*Id.*) On exam, Dr. Towbin noted Plaintiff had bilateral tenderness in various parts of

her body. (*Id.*) Dr. Towbin assessed a history of upset stomach and fibromyalgia, and changed

Plaintiff's pain medication. (*Id.*)

On March 18, 2004, Robert M. Monger, M.D. examined Plaintiff at the request of Dr.

Towbin. (*Id.* at 148–49.) Plaintiff described chronic diffuse musculoskeletal pain along with

fatigue and memory problems. (*Id.* at 148.) Plaintiff also complained of frequent headaches,

heart palpitations, hay fever, pleurisy,[3] and occasional joint swelling. (*Id.*) Dr. Monger noted: (1) he did not have any of Plaintiff's medical records for review; and (2) Plaintiff was scheduled to have lab work done by another physician the following week. (*Id.*) On examination, Dr. Monger found that Plaintiff had at least fourteen to sixteen of eighteen fibromyalgia tender points present. (*Id.* at 149.) Dr. Monger opined that Plaintiff was "medically disabled because of fibromyalgia." (*Id.*) He also opined that Plaintiff's "memory problems and fatigue in particular would make it extremely difficult" for her to carry out her work as a nurse. (*Id.*)

On March 29, 2004, Dr. Towbin filled out a functional ability assessment on behalf of Plaintiff. (*Id.* at 151–58.) At the end of the report, Dr. Towbin noted: (1) "the bulk of this information is based on p[atient] report;" and (2) his "ability to test physical capacities [at] this office is very limited." (*Id.* at 157.) Dr. Towbin indicated that Plaintiff could lift or carry ten pounds "occasionally" and one or two pounds "frequently."[4] (*Id.* at 153.) Dr. Towbin also noted Plaintiff suffered one to three days of muscle pain after "lifting or carrying any w[eight]." (*Id.*) Dr. Towbin reported that Plaintiff could: (1) sit for one-half hour without interruption; (2) stand for ten minutes before resuming sitting; and (3) stand or walk for a total of two hours in an eight-hour workday. (*Id.* at 154.) Dr. Towbin indicated that Plaintiff could "frequently" stoop and

---

[3]Pleurisy is "[i]nflammation of the . . . membrane which covers the inner aspect of the chest walls as well as the lungs." 4–P Attorneys' Dictionary of Medicine 6525 (Matthew Bender 2005).

[4]The assessment included the following relevant definitions: (1) "occasionally" means up to one-third of an eight-hour workday; and (2) "frequently" means one-third to two-thirds of the workday. (Admin. R. at 153.)

balance, but she could only "occasionally" climb stairs or ladders, crouch, kneel, or crawl.  (*Id.* at 155.)  He noted Plaintiff was "well appearing, overall in good spirits."  (*Id.* at 158.)  Dr. Towbin assessed fibromyalgia with chronic fatigue syndrome.  (*Id.*)

      **b.**     **_Medical Evidence from Consultive Examinations_**

On November 20, 2003, Michael Auringer, M.D. performed a consultative examination of Plaintiff in connection with her application for social security benefits.  (*Id.* at 134–41.)  Dr. Auringer noted he had reviewed records from Plaintiff's primary care physician, which included a rheumatologic evaluation that fell within normal limits.  (*Id.* at 134.)  Plaintiff reported that her problems began in 1986 when she developed fatigue and achiness in her hands, feet, elbows, hips, and quadriceps after a shoulder surgery.  (*Id.*)  Plaintiff reported she "awoke one day in 1996 and was unable to move," but that she gradually improved during the course of eight months of bed rest.  (*Id.*)  Plaintiff stated that she quit working as a nurse in May 2000 as a result of fatigue and pain and because she "was noticing some forgetfulness and making some medicine dispensation errors."  (*Id.*)  Plaintiff reported that she felt exhausted after climbing stairs, vacuuming, and preparing evening meals.  (*Id.*)  Plaintiff mentioned she was no longer able to ski, hike, or bike.  (*Id.* at 135.)

On examination, Dr. Auringer noted Plaintiff sat comfortably and had no difficulty getting on and off the exam table or removing and replacing her shoes.  (*Id.*)  Dr. Auringer diagnosed fibromyalgia and chronic fatigue syndrome after administering a sensory exam and assessing Plaintiff's coordination, range of motion, motor strength, muscle bulk and tone, and deep tendon reflexes.  (*Id.* at 135–37.)  Dr. Auringer concluded that out of an eight-hour work day, Plaintiff

could stand and walk at least six hours.  (*Id.* at 137.)  He also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" indicating that Plaintiff had no limitations on her ability to: (1) stand or walk, (2) lift or carry, or (3) push or pull.  (*Id.* at 138–39.)  The source statement also shows that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.  (*Id.* at 139–41.)

On June 19, 2004, John Burt, Ph.D. performed a psychological consultative examination of Plaintiff in connection with her application for benefits.  (*Id.* at 161–64.)  With respect to her daily life, Plaintiff commented that she spent her days doing minor chores, sitting on her patio, caring for her bird, reading, and watching television.  (*Id.* at 162.)  While such chores as cooking, laundry, and doing dishes were not problematic, Plaintiff stated that vacuuming and shopping caused her fatigue and pain.  (*Id.*)  Plaintiff also stated that she attended professional baseball games about two times per month with her husband.  (*Id.*)  On mental status examination, Dr. Burt noted Plaintiff was generally cooperative, patient, and friendly.  (*Id.*)  He also noted Plaintiff's speech was clear, if somewhat rambling, and her thought process was generally organized.  (*Id.*)  In her diagnostic interview, Plaintiff described symptoms of depression including insomnia, low energy, varying appetite, difficulty with attention and concentration, and low self-esteem.  (*Id.* at 162–63.)

Dr. Burt assessed Plaintiff suffered from "major depression–mild."  (*Id.* at 160.)  Dr. Burt determined that such depression would have a slight impact on Plaintiff's ability to respond appropriately to others in a work environment.  (*Id.*)  Dr. Burt also noted Plaintiff's ability to "understand, remember, and carry out instructions" was not limited.  (*Id.* at 159.)  A battery of

psychological testing revealed that both Plaintiff's "Full Scale IQ" and "General Memory" fell into the high average range. (*Id.* at 163–64.) Dr. Burt concluded that Plaintiff generally had "good intelligence and memory." (*Id.* at 164.)

### 2.    *Procedural History*

On June 4, 2003, Plaintiff filed an application for disability insurance benefits. (*Id.* at 61–62.) On August 15, 2003, the Social Security Administration denied Plaintiff's application. (*Id.* at 39–42.) On August 27, 2003, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 38.) On May 20, 2004, the ALJ held a hearing, at which Plaintiff testified in the presence of her non-attorney representative. (*Id.* at 15.) A vocational expert also testified at the hearing. (*Id.*)

Plaintiff testified that she began working as a licensed practical nurse in 1989. (*Id.* at 196.) Plaintiff stated that her duties included administering medications, performing medical treatments, supervising nursing assistants, and coordinating care with doctors. (*Id.*) Plaintiff represented that she quit her job in May 2002. (*Id.* at 197.) Plaintiff explained that her physical symptoms included joint and muscle pain, fatigue, and inability to stand or walk for long periods of time. (*Id.*) Plaintiff testified that she also suffered "some memory loss" and was "starting to feel unsafe in the job" before she quit, particularly in her role administering medications to patients. (*Id.* at 197–98.)

Plaintiff stated that Amitriptyline and Naprosyn allowed her to sleep and helped with her pain. (*Id.* 198–200.) Plaintiff admitted she did not use walking devices, braces, or wraps. (*Id.* at 201.) Plaintiff testified that she went to a gym three times per week to use weight machines. (*Id.*

at 202–03.)  Plaintiff stated that she exercised in a swimming pool and rode a bike occasionally.  (*Id.* at 203.)  Plaintiff acknowledged: (1) she had not received physical therapy since 1998; and (2) she had never received any steroid injections in the areas where her pain was most intense.  (*Id.*)

Plaintiff testified that she could sleep "pretty well" on a "good day."  (*Id.*)  Plaintiff stated that she tried to get at least nine hours of sleep at night, but she typically woke up six or seven times due to stiffness.  (*Id.* at 204–05.)  Plaintiff testified that upon awakening each morning she was "very stiff" and took an hour to "loosen up."  (*Id.* at 204.)  Plaintiff reported that: (1) she generally felt "pretty tired" by the late afternoon; and (2) on "a really tired day" she would take a vitamin supplement to get herself through the evening hours.  (*Id.* at 205.)

Vocational expert Deborah Christensen testified at the hearing.  (*Id.* at 205–09.)  She testified that Plaintiff's relevant past work as a licensed practical nurse was, per the Dictionary of Occupational Titles, a skilled position requiring medium level exertion.  (*Id.* at 207–08.)

On November 2, 2004, the ALJ issued a decision.  (*Id.* at 15–27.)  The ALJ determined that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform her past relevant work.  (*Id.* at 26.)  In reaching his conclusion, the ALJ first determined that there was no evidence Plaintiff had engaged in substantial gainful activity since May 31, 2002.  (*Id.* at 18.)  Second, the ALJ found that Plaintiff's fibromyalgia constituted a "severe" impairment.  (*Id.* at 19.)  The ALJ also determined that Plaintiff's depression was not severe.  (*Id.*)  Third, the ALJ determined that Plaintiff's fibromyalgia did not meet or equal the criteria of any of the established listings.  (*Id.* at 20.)  The ALJ also considered the impairment under Social

Security Ruling 99–2p, which acknowledges that "there may be considerable overlap of the symptoms of chronic fatigue syndrome and fibromyalgia." (*Id.*)  The ALJ found no functional equivalence therewith to any of the established listings. (*Id.*)

Finally, the ALJ determined Plaintiff's RFC.  The ALJ assessed Plaintiff's credibility regarding her subjective complaints of pain. (*Id.* at 24–25.)  The ALJ determined that Plaintiff was "less than fully credible regarding the extent of her limitations" because:

> [Plaintiff] appears to maintain a fairly normal lifestyle.  She performs light chores in the morning, shops several times a week and carries in groceries, goes to the gym three times a week, rides a bicycle with her husband at least once a month, and attends professional baseball games a couple times a month.  She has social relationships.  [Plaintiff's] activities exceed the activities one usually associates with a totally disabled individual.

(*Id.*)

Next, the ALJ assessed the doctors' opinions. (*Id.* at 25.)  The ALJ found that the opinions expressed by Dr. Towbin in the "Physician Questionnaire on Functional Capacities" were to be given little weight because "[t]he opinions appear to be based on patient self-reporting with no objective evidence presented." (*Id.*)  The ALJ noted Plaintiff "could not maintain her current lifestyle including shopping, biking, and going to professional baseball games at the level of disability opined" by Dr. Towbin. (*Id.*)  The ALJ also discounted the opinions of Dr. Monger because:

> Dr. Monger states that he had no medical records for review and lab testing was apparently to be done a week after the evaluation by another physician.  Dr. Monger also apparently based his opinions on a belief that [Plaintiff] had memory problems, however, this was not borne out by objective testing conducted by Dr. Burt.

(*Id.*)  The ALJ instead gave "great weight" to the opinions of the two consultive evaluators, Dr. Auringer and Dr. Burt.  (*Id.*)  The ALJ noted Dr. Burt's opinion was: (1) "supported by the record as a whole and the [Plaintiff's] activities of daily living;" (2) "based on objective medical testing which is valid;" and (3) "rendered after having reviewed the medical evidence in the administrative record."  (*Id.*)

Based on the evidence presented to him, the ALJ issued his RFC determination.  The ALJ determined that Plaintiff "could stand and walk at least six hours per day, sit eight hours in an eight hour day, and lift and carry without restrictions[.]  [Plaintiff] cognitively was operating at a high average level of intellectual functioning and had general memory in the high average range[.]"  (*Id.* at 26.)  In accord with the RFC evaluation, the ALJ determined that Plaintiff "is capable of performing her past relevant work as a licensed practical nurse and thus is not disabled."  (*Id.*)

On December 14, 2004, Plaintiff requested review of the decision.  (*Id.* at 180.)  On May 12, 2005, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 5–9.)  Thus, the ALJ's decision became the Commissioner's final decision for the purposes of the present appeal.  On July 11, 2006, Plaintiff filed a complaint in this court challenging the Commissioner's denial of disability insurance benefits.  (Compl. [filed July 11, 2005].)

# ANALYSIS

## 1.     Standard of Review

Section 405(g) of the Social Security Act establishes the scope of this court's review of the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2006) (incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant part, that:

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g) (2006).  Thus, this court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision.  *See id.*; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The court must uphold the Commissioner's decision if it is supported by substantial evidence.  *See Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This court cannot re-weigh the evidence nor substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987).  That does not mean, however, that my review is merely cursory.  To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion.  *Frey v. Bowen*,

816 F.2d 508, 512 (10th Cir. 1987).  A decision is not based on substantial evidence if it is

overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting

it.  *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  The ALJ's decision is also subject to

reversal for application of the wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th

Cir. 1988); *Frey,* 816 F.2d at 512.

## 2.      *Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the

claimant meets the insured status requirements, is less than sixty-five years of age, and is under a

"disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  The Social Security Act

defines a disability as an inability "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In proving his disability, a claimant must make a

*prima facie* showing that he is unable to return to the prior work he has performed.  *Huston v.*

*Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).  Once the claimant meets that burden, the

Commissioner must show that the claimant can do other work activities and that the national

economy provides a significant number of jobs which the claimant could perform.  *Frey*, 816 F.2d

at 512.

The Commissioner has established a five-step process to determine whether a claimant

qualifies for disability-insurance benefits.  *See* 20 C.F.R. § 404.1520 (2006); *Bowen v. Yuckert*,

482 U.S. 137, 140–42 (1987) (describing five-step analysis).  A claimant may be declared disabled

or not disabled at any step; and, upon such a determination, the subsequent steps may be

disregarded. *See* 20 C.F.R. § 404.1520(a) (2006); *Williams v. Bowen*, 844 F.2d 748, 750 (10th

Cir. 1988). First, the claimant must demonstrate that he is not currently involved in any substantial

gainful activity. 20 C.F.R. § 404.1520(b) (2006). Second, the claimant must show a medically

severe impairment (or combination of impairments) which limits his physical or mental ability to do

basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is

equivalent to established listings, then the claimant is judged conclusively disabled. *Id.* §

404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds

to the fourth step. At this stage, the claimant must show that the impairment prevents him from

performing work he has performed in the past. *See Williams*, 844 F.2d at 751 (citations omitted).

If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e)

(2006); *Williams*, 844 F.2d at 751. This step requires a three phase analysis.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual
> functional capacity (RFC), and in the second phase, he must determine the physical
> and mental demands of the claimant's past relevant work. In the final phase, the
> ALJ determines whether the claimant has the ability to meet the job demands found
> in phase two despite the mental and/or physical limitations found in phase one. At
> each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). The fifth step requires

the Commissioner to demonstrate that (1) the claimant has the RFC to perform other work based

on the claimant's age, education, past work experience, and (2) there is availability of that type of

work in the national economy. *See* 20 C.F.R. § 404.1520(f) (2006); *Williams*, 844 F.2d at 751.

-14-

**3.      *Disability Determination***

Plaintiff makes four arguments in support of her contention that the ALJ's decision is erroneous.[5]   First, Plaintiff argues that the ALJ improperly weighed the opinions of her treating physician and examining specialist against those of consultive experts.   (Pl.'s Opening Br. at 6–10 [filed Jan. 19, 2006] [hereinafter "Pl.'s Br."]; Pl.'s Reply Br. at 1–8 [filed Mar. 7, 2006] [hereinafter "Pl.'s Reply"].)   Second, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility.   (Pl.'s Br. at 11–12; Pl.'s Reply at 9–10.)   Third, Plaintiff argues that the ALJ's RFC determination is not generally supported by substantial evidence.   (Pl.'s Br. at 10–12; Pl.'s Reply at 8–10.)   Fourth, Plaintiff argues that the ALJ failed to adequately develop the record.   (Pl.'s Reply at 9.)   I evaluate Plaintiff's arguments in turn.

**a.      *Weight Accorded to the Medical Opinions***

Plaintiff argues that substantial evidence does not support the ALJ's evaluation of the medical opinions of Dr. Towbin, Dr. Monger, or Dr. Auringer in relation to the determination of Plaintiff's RFC.   (Pl.'s Br. at 6–10; Pl.'s Reply at 1–10.)   Below I address the ALJ's determination regarding each doctor individually.

**i.      *Treating Physician Dr. Towbin***

The first discernable argument in Plaintiff's brief is that the ALJ failed to cite "specific and legitimate reasons for disregarding" the opinion of the treating physician, Dr. Towbin.[6]   (*Id.* at

---

[5]In the interest of clarity, I have altered the sequential order of Plaintiff's arguments.

[6]Defendant does not dispute that Dr. Towbin is a "treating physician."   (*See* Def.'s Resp. Br. at 15 [filed Feb. 21, 2006].)

8–9.)  Although Plaintiff quotes a substantial part of 20 C.F.R. § 404.1527(d)(2), Plaintiff does not argue that the ALJ erred in his decision not to give controlling weight to Dr. Towbin's opinions under this regulation.  (Pl.'s Br. at 7–8.)

The ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(d)(2) (2006); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Moreover, the ALJ must consider a series of factors in determining the amount of weight to give any medical opinion, including the degree to which the opinion is supported by relevant evidence and the opinion's consistency with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(d)(2)–(6) (2006); *Goatcher v. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).  Should the ALJ disregard the opinion of a treating physician, the ALJ must set forth "specific, legitimate reasons" for doing so.  *Hamlin*, 365 F.3d at 1215.  The ALJ has satisfied this burden in the instant case.

The ALJ accorded "little weight" to Dr. Towbin's opinions—set forth in a functional capacity questionnaire dated March 29, 2004—in apparent reliance on the third of the aforementioned series of specific factors, "supportability."  *See* 20 C.F.R. § 404.1527(d)(3) (2006) (stating "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion"); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (stating a treating physician's opinion may be disregarded if the conclusions therein are not supported by

-16-

specific findings).  Specifically, the ALJ found Dr. Towbin's "opinions appear to be based upon patient self-reporting with no objective evidence presented."  (Admin. R. at 25.)

Dr. Towbin's own statements indicate he did not rely on "medical signs and laboratory findings" to support the opinions he offered in the questionnaire.  (*Id.* at 157.)  Dr. Towbin stated that "the bulk"—if not "all"[7]—of the information in the functional ability questionnaire was "based on p[atient] report."[8]  (*Id.*)  Plaintiff herself has acknowledged that Dr. Towbin "did not have the equipment to actually conduct a functional capacity evaluation . . . ."  (Pl.'s Br. at 9.)  Despite this acknowledged lack of necessary equipment, Dr. Towbin nevertheless completed the questionnaire knowing that Plaintiff would submit it in support of her application for social security disability insurance.  (*See* Admin. R. at 158.)  As such, there is substantial evidence that Dr. Towbin's opinions were unsupported by medical signs and laboratory findings.  *See* 20 C.F.R. § 404.1527(d)(3) (2006); *Castellano*, 26 F.3d at 1029; *see also Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (finding examiner's recitation of claimant's own statement was "patently self-serving and cannot be controlling absent other persuasive evidence in the record").  Thus, the ALJ did not err in discounting the unsupported medical opinions set forth in the March 29, 2004 questionnaire.

---

[7]The transcript of Dr. Towbin's March 29, 2004 dictation states: "[a]ll of this information from taken from [sic] the patient and documented.  Unfortunately, we do not have abilities to do physical capacities examinations in this office." (Admin. R. at 158.)

[8]Plaintiff nevertheless argues that Dr. Towbin "*did not* indicate on the questionnaire or in his dictation that [his RFC determination was] based on subjective complaints."  (Pl.'s Reply at 2 [emphasis in original].)  I admonish Plaintiff's blatant misrepresentation.

While Plaintiff correctly contends Dr. Towbin had treated her since 2002 and had previously recorded subjective findings of her alleged disability, Plaintiff's further contention that Dr. Towbin recorded material objective findings of disability is not supported by the record. (*See* Pl.'s Br. at 9; Pl.'s Reply at 2.)  Indeed, the only relevant objective findings noted in Dr. Towbin's records are the doctor's repeated assessments that Plaintiff has multiple "tender points" apropos of the diagnosis of fibromyalgia.[9] (*See* Admin. R. at 127, 130, 131, 133.)  Plaintiff evidently fails to understand how these objective findings are *in accord with* the ALJ's step two determination that Plaintiff suffered from fibromyalgia. (*See id.* at 19 [noting "clinical records . . . support a finding that [Plaintiff] has the following impairment, which is 'severe:' fibromyalgia"].)  Thus, other than discounting Dr. Towbin's objectively unsupported opinions set forth in the March 29, 2004 questionnaire, the only material aspect of Dr. Towbin's medical opinion that the ALJ discounted was the doctor's conclusion stating Plaintiff was "disabled and unable to work [five] days a week." (*Id.* at 130.)  The ALJ properly discounted this opinion because a treating source's opinion is not dispositive on the ultimate issue of disability, since that determination is reserved to the Commissioner.  20 C.F.R. § 404.1527(e) (2006); Soc. Sec. Ruling 96–5p, 1996 WL 374183 at *5; *accord Castellano*, 26 F.3d at 1029 (stating treating physician's opinion that claimant is "totally disabled" is not dispositive because such an ultimate conclusion is reserved to the Commissioner). Thus, Plaintiff's argument as to this point is unavailing.

---

[9]Dr. Towbin's only other noted objective findings relate to: (1) Plaintiff's vital signs; (2) the condition of Plaintiff's tongue; and (3) Plaintiff's response to the administration of acupuncture.  (*See* Admin. R. at 127, 130, 131, 133.)

Finally, Plaintiff asserts that the "ALJ has inferred that the [physical capacity] restrictions given [by Dr. Towbin] were not actually the opinion[s] of [Dr. Towbin] despite [Dr. Towbin's] signature" on the physical capacity questionnaire. (Pl.'s Reply at 3.)  In support of this argument, Plaintiff cites *McGoffin v. Barnhart*, 288 F.3d 1248 (10th Cir. 2002). (*Id.* at 2–3.)  Plaintiff misapprehends both the nature of the ALJ's determination and the relevance of *McGoffin*.

In *McGoffin*, in spite of unrefuted evidence to the contrary, the ALJ rejected a written assessment by a treating physician because the ALJ did not believe that the physician had "reviewed [or] agreed with the assessment." 288 F.3d at 1252.  The unusual circumstances addressed in *McGoffin* are wholly irrelevant to this case.  Here, the ALJ did not reject Dr. Towbin's opinion because of any doubts regarding whether Dr. Towbin reviewed or agreed with the opinions set forth in his March 29, 2004 assessment. (Admin. R. at 25.)  As discussed above, the ALJ discounted Dr. Towbin's physical capacity assessment because of the significant qualifications that Dr. Towbin placed on his own assessment.  Accordingly, Plaintiff's argument is without merit.  The ALJ's decision to discount Dr. Towbin's opinion was supported by substantial evidence.

### ii.   *Examining Physician Dr. Monger*

Without citing either law or the record, Plaintiff argues: "[a]s an examining specialist, [Dr. Monger's] opinion should be given more weight than the [consultive] examiner Dr. Auringer, who met with [Plaintiff] only briefly." (Pl.'s Reply at 7.)  This conclusory argument is unconvincing.[10]

---

[10]I note that the record gives no indication that Dr. Monger met with Plaintiff for a longer period of time than did Dr. Auringer. (Admin. R. at 134–41, 148–49.)  Both doctors saw Plaintiff

Social Security regulations require the ALJ to evaluate every medical opinion in the record. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citing Soc. Sec. Ruling 96–5p, 1996 WL 374183, at *1). The ALJ must "provide specific, legitimate reasons for rejecting" a medical opinion. *Id.* (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 [10th Cir. 2001]). The regulations require the ALJ "to consider several specific factors in weighing a medical opinion." *Id.* (citing 20 C.F.R. §§ 416.927[d][1]–[6]).

Here, the ALJ offered two reasons for his decision to give "little weight" to the opinions of Dr. Monger: (1) "Dr. Monger states that he had no medical records for review and lab testing was apparently done a week after the evaluation by another physician;" and (2) "Dr. Monger also apparently based his opinions on a belief that the claimant had memory problems, however, this was not borne out by objective testing conducted by Dr. Burt." (Admin. R. at 25.) Plaintiff is correct that a specialist's opinion is generally entitled to more weight than that of a non-specialist. 20 C.F.R. § 404.1527(d)(5) (2006). Nevertheless, two other considerations, supportability and consistency, control the ALJ's decision to accord Dr. Monger's opinion with "little weight." *See id.* § 404.1527(d)(3) (stating "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion"); *id.* § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion.").

---

only once. (*Id.*)

There is substantial evidence in the record that Dr. Monger's opinion is neither supportable nor consistent with the record as a whole. Dr. Monger arrived at his opinion that Plaintiff was disabled without the benefit of reviewing Plaintiff's pending lab work or "any of [Plaintiff's] old medical records." (Admin. R. at 148.) Instead, Dr. Monger's opinion appears to have been based upon: (1) Plaintiff's self-reporting; and (2) palpitation for tender points, which is the same test repeatedly conducted by Dr. Towbin. (*Id.* at 148–49, 127, 130, 133.) Moreover, Dr. Monger did not determine that Plaintiff had any specific physical limitations. (*Id.* at 148–49.) In contrast, Dr. Auringer conducted objective tests of Plaintiff's physical capacities in connection with his determination that Plaintiff's condition imposed only mild limitations on her ability to work. (Admin. R. at 135–37.) The ALJ is not required to give controlling weight to an opinion that is inconsistent with other substantial evidence in the record. *Hamlin*, 365 F.3d at 1215; *see also Castellano*, 26 F.3d at 1029 (stating that a treating physician's opinion may be disregarded if the conclusions therein are not supported by specific findings). Thus, the evidence supports the ALJ's conclusion that Dr. Monger's opinion was neither well-supported nor consistent with other substantial evidence.

Dr. Monger further opined that Plaintiff was disabled in part due to "memory problems" that would make it "difficult to carry out her usual work responsibilities as a nurse." (Admin. R. at 149.) The record gives no indication that Dr. Monger, a specialist in rheumatic conditions, relied on anything but self-reporting in support this conclusion. (*See id.* at 148–49.) Thus, it is proper to discount this opinion as unsupportable. *See* 20 C.F.R. § 404.1527(d)(3) (2006); *see also Coleman*, 58 F.3d at 579 (finding examiner's recitation of claimant's own statement was "patently

self-serving and cannot be controlling absent other persuasive evidence in the record").

Additionally, Dr. Monger's opinion is inconsistent with the objective findings of consultive

examiner Dr. Burt, who determined that Plaintiff operated within the "high average range of

intellectual functioning and high average general memory." (Admin. R. at 164.) The ALJ may

discount an opinion that is inconsistent with other substantial evidence in the record. *Hamlin*, 365

F.3d at 1215. As such, the ALJ's decision to accord little weight to Dr. Monger's opinion

regarding Plaintiff's alleged memory problems was not in error.

### iii.    *Consultive Examiner Dr. Auringer*

Plaintiff objects to the fact that the ALJ accorded greater weight to the opinions of Dr.

Auringer than to those of Dr. Monger. (Pl.'s Reply at 7.) In contrast to Dr. Monger, the record

indicates that Dr. Auringer conducted a review of Plaintiff's laboratory reports and previous

medical records. (Admin. R. at 134.) In addition, the record reflects that Dr. Auringer tested

Plaintiff's physical capacities by evaluating Plaintiff's coordination, deep tendon reflexes, motor

strength, muscle bulk, and range of motion at joints throughout the body. (*Id.* at 135–37.) Dr.

Auringer's opinions were therefore supported medical findings. *See* 20 C.F.R. § 404.1527(d)(3)

(2006). As such, the ALJ's decision to accord greater weigh to Dr. Auringer's opinions than to

the unsupported, inconsistent opinions of Dr. Monger was not erroneous. Plaintiff's argument to

the contrary is unavailing.

Plaintiff also argues that Dr. Auringer's opinion is not supported by the record as a whole.[11]  (Pl.'s Br. at 10.)  Plaintiff points to her own testimony and maintains that the record indicates she has at least some limitations beyond what Dr. Auringer assessed.  (Pl.'s Reply at 10.)  As already discussed, Dr. Auringer's determination that Plaintiff suffered from fibromyalgia is consistent with the assessments of Dr. Monger and Dr. Towbin.  (Admin. R. at 137, 149, 158.)  Thus, the doctors differ only as to their opinions regarding the extent to which Plaintiff's impairment restricts her physical capacities.  I have already determined the ALJ did not err in his decisions to discount: (1) Dr. Towbin's RFC assessment; and (2) Dr. Towbin's and Dr. Monger's respective assessments that Plaintiff was disabled.  Unlike the opinions of Dr. Towbin and Dr. Monger, Dr. Auringer's RFC assessment is supported by specific findings based on objective medical tests of Plaintiff's physical capacities.  (*Id.* at 135–37.)  As such, Dr. Auringer's opinion is entitled to greater weight under the relevant regulations.  *See* 20 C.F.R. § 404.1527(d)(3) (2006) (stating "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion").

---

[11]Citing her affidavit in support of her request for review by the Appeals Council, Plaintiff also alleges that Dr. Auringer only "conducted a very limited exam of [Plaintiff]."  (Pl.'s Br. at 9–10.)  Just as the ALJ cannot substitute his own medical opinion for that of a treating physician, *Hamlin*, 365 F.3d at 1221, the ALJ ought not substitute Plaintiff's lay opinion regarding the thoroughness of her exam for that of the health care professional who conducted the exam.  *See Williams v. Barnhart*, No. 05-1298, 2006 WL 1109765, at *2 (10th Cir. Apr. 27, 2006) (concluding "the ALJ is not required to accept a claimant's lay opinion on the meaning or significance of medical tests").  Plaintiff's allegation is even less availing when viewed in conjunction with: (1) the ALJ's determination that Plaintiff is not credible; and (2) the fact that the allegation was not raised until after the ALJ issued his opinion.  (Admin. R. at 25–26, 165 [credibility determination discussed *infra*].)

Plaintiff's argument is thus unavailing.  Based on the foregoing, I find that substantial evidence supported the ALJ's decision.  Consequently, the ALJ did not err in his decision to accord Dr. Auringer's opinion great weight.

### b.      Plaintiff's Credibility

Plaintiff does not specifically dispute the ALJ's conclusion that her regular activities "exceed the activities one unusually associates with a totally disabled individual."  (Admin. R. at 25.)  Instead, Plaintiff asserts that she "is simply not uncredible." (Pl.'s Br. at 11.)  Plaintiff appears to assert that the ALJ's determination regarding Plaintiff's credibility was not supported by substantial evidence.  (*Id.*)  I disagree.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.  Nonetheless, [f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *McGoffin*, 288 F.3d at 1254 (citations omitted) (internal quotation marks omitted) (second alteration in original).  I find that the ALJ's findings are indeed closely and affirmatively linked to substantial evidence.

The ALJ based his conclusion that Plaintiff was not fully credible upon inconsistencies between Plaintiff's complaints and non-medical evidence in the record.  (Admin. R. at 25–26.)  A brief review of the record will shed some light on the inconsistencies that troubled the ALJ.  Plaintiff reported to Dr. Towbin that she: (1) could only occasionally lift ten pounds; and (2) experienced pain in her joints, arms, and legs when lifting and carrying any weight, followed by between one and three days of muscle pains.  (*Id.* at 153.)  Despite her reported limitations,

Plaintiff testified that she: (1) drove to the gym three times each week to use weight training machines; and (2) went grocery shopping and carried groceries twice each week. (*Id.* at 202–04.) Plaintiff also reported that she could: (1) sit for only one-half hour without interruption; (2) stand for only ten minutes before resuming sitting; and (3) never be exposed to "moderate" levels of noise. (*Id.* at 154–56.) Despite these claimed limitations, the record indicates that Plaintiff: (1) attends professional baseball games twice each month; (2) jogs in the pool at her apartment occasionally; (3) rides a bicycle once a month; and (4) does daily light chores. (*Id.* at 162, 201–04.)

Additionally, the record reveals inconsistencies between Plaintiff's testimony and the medical evidence. Plaintiff claimed that she suffered from loss of concentration and memory. (Compl. at 2.) In support of this claim, Plaintiff testified that if interrupted when passing out medications during her employment as a nurse, she would "go back and . . . be lost" with "no idea of what [she] did and didn't do." (Admin. R. at 198.) Plaintiff also testified that since she quit her job, her allegedly disabling memory problems caused her to forget her children's birthdays and to neglect to take her pills. (*Id.*) The objective findings of Dr. Burt—the only expert in the record to conduct an evaluation of Plaintiff's mental capacities—are inconsistent with Plaintiff's anecdotal testimony. Dr. Burt concluded that Plaintiff has no restrictions on her ability to "understand, remember, and carry out instructions." (*Id.* at 159.) Moreover, Dr. Burt conducted a battery of tests and determined that Plaintiff "is operating within high average range of intellectual functioning and high average general memory." (*Id.* at 164.) In light of my review of record as a whole, I find the ALJ's determination that Plaintiff is not credible is based on substantial evidence.

Plaintiff's final credibility argument consists of citation to a brief submitted to the Appeals Council, available in the administrative record.  (Pl.'s Br. at 11 [citing Admin. R. at 183–87].)  Plaintiff argues the ALJ erred in arriving at his determination that Plaintiff's regular activities were inconsistent with her alleged level of disability because "[t]he ALJ ignored . . . the *qualifications* on these [regular] activities."  (Admin. R. at 184 [emphasis added].)  In support of her argument, Plaintiff offers nearly three single-spaced pages of Plaintiff's own statements describing her activities, daily life, and symptoms.  (*Id.* at 184–86.)  Plaintiff's contention that the ALJ failed to consider her "qualifications" is without merit.  "The record must demonstrate that the ALJ considered all of the evidence, but the ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).  Plaintiff's recitation of her previous statements regarding her alleged disabilities does nothing to erase substantial evidence of inconsistencies between Plaintiff's regular activities and her claimed level of disability.  Plaintiff seems to lose sight of the fact that the ALJ found Plaintiff suffered from fibromyalgia and recognized Plaintiff's condition to be "severe."  (Admin. R. at 19.)  Nevertheless, "disability requires more than mere inability to work without pain."  *Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) (citations omitted) (internal quotation marks omitted).  I have already found the ALJ did not err in his determination that Plaintiff is less than fully credible.  Thus, Plaintiff's argument that the ALJ failed to consider her reported "qualifications" is nothing more than invitation to engage in an impermissible re-weighing of the evidence and to substitute my judgment for the ALJ's own judgment.  *See Jordan*, 835 F.2d at 1316.  I decline Plaintiff's invitation.

### c.   *The ALJ's Assessment of Plaintiff's RFC Is Supported by Substantial Evidence*

### i.   *Medium Level Exertion Finding*

Citing only to the "Findings" section of the ALJ's decision, Plaintiff claims that the ALJ's findings characterize Plaintiff's RFC "simply as 'medium level exertion.'" (Pl.'s Reply at 10.) Based on this claim, Plaintiff argues "there is no possible way that the ALJ's RFC can be found to be based on substantial evidence." (*Id.* at 10; *see* Pl.'s Br. at 11.)   Additionally, Plaintiff argues that the ALJ "did not even grant the limited restriction of Dr. Auringer." (Pl.'s Reply at 10.)  I encourage Plaintiff to re-read the ALJ's decision.

While the ALJ did not explain his RFC determination in detail in the "Findings" section of his opinion, the ALJ did set forth his reasoning for finding Plaintiff retained the capacity for "medium level exertion" on the immediately preceding page of his opinion.  (Admin. R. at 25–26.) Under a section styled "Establishment of Residual Functional Capacity," the ALJ weighed the evidence and explained his determination of Plaintiff's RFC in detail.  (*Id.* at 25.)  Furthermore, the ALJ *did* take account of Dr. Auringer's restriction when the ALJ assessed Plaintiff's ability to perform past relevant work: "[a]s the [sic] Dr. Auringer found that [Plaintiff] could stand and walk at least six hours per day, sit eight hours in an eight hour day, and lift and carry without restrictions . . . the undersigned finds that [Plaintiff] could return to her past relevant work as a licensed practical nurse." (*Id.* at 26.)  Thus, I reject Plaintiff's arguments and admonish Plaintiff's disregard for the facts set forth in the record.

ii.    *Loss of Memory and Concentration*

Plaintiff argues that the ALJ erred in not assessing any limitations with respect to Plaintiff's concentration and memory.  (Pl.'s Br. at 11.)  Plaintiff flatly states that she "does experience a loss of concentration and memory, as [Plaintiff] has explained in numerous places in the record."  (*Id.*) Plaintiff's claims of memory loss contradict the findings of consultive examiner Dr. Burt, who determined that Plaintiff had: (1) "high average general memory;" and (2) no limitations with respect to her ability to "understand, remember or carry out instructions." (Admin. R. at 164, 159.)

Plaintiff's argument essentially asks this court to re-weigh the evidence and substitute its judgment for that of the ALJ, neither of which it may do.  *See Jordan*, 835 F.2d at 1316.  I underscore that this court's exclusive task is to determine whether the ALJ's decision was supported by substantial evidence.  *Dollar*, 821 F.2d at 532.  While the record is unequivocally replete with instances in which Plaintiff *claims* she has memory loss, I have already found the ALJ's credibility determination was not erroneous.  As such, I find that Dr. Burt's objective evaluation of Plaintiff's intelligence and memory constitutes substantial evidence that Plaintiff does not suffer from loss of concentration and memory.[12]

―――――――――――――――――

[12]Plaintiff argues that "intelligence and memory testing at a particular point in time is not the same thing as loss of concentration and memory." (Pl.'s Br. at 11.)  I gather that this means Plaintiff questions Dr. Burt's clinical methodology.  The same analysis I applied to Plaintiff's objection to Dr. Auringer's examination applies here: just as the ALJ cannot substitute his own medical opinion for that of a treating physician, *Hamlin*, 365 F.3d at 1221, the ALJ ought not substitute Plaintiff's lay opinion regarding the usefulness of Dr. Burt's evaluation for the doctor's own medical judgment.  *See Williams*, 2006 WL 1109765, at *2 (concluding "the ALJ is not required to accept a claimant's lay opinion on the meaning or significance of medical tests").

### d.      *Failure to Develop the Record*

Plaintiff's final argument is that the ALJ's failure to ask her to testify with respect to her capacity to stand, walk, or lift "is *arguably* a failure on the part of the ALJ to develop the record." (Pl.'s Reply at 9 [emphasis added].)  This argument is unquestionably unavailing.  As previously discussed, the bulk—if not all—of the information that Dr. Towbin reported in the March 29, 2004 functional capacity questionnaire was, in Dr. Towbin's words, "based on p[atient] reporting." (Admin. R. at 157.)  The questionnaire assessed Plaintiff's capacity to stand, walk, and lift.  (*Id.* at 153–57.)  Nowhere does Plaintiff claim her physical capacities deteriorated between March 29, 2004 and the date of the hearing.  Accordingly, the evidence Plaintiff claims the ALJ failed to develop was already part of the record prior to the hearing in the form of her self-reported responses to the March 29, 2004 functional capacity questionnaire.  *Cf. Hawkins v. Chater*, 113 F.3d 1162, 1168–69 (10th Cir. 1997) (noting the ALJ's responsibility to develop the record is heightened where there are gaps in the evidence necessary to a reasoned evaluation of the claim). Plaintiff's argument fails.

### 4.      *Conclusion*

Based on the foregoing it is therefore

ORDERED that

1.  The Commissioner's decision is AFFIRMED.

2.  The hearing scheduled for Friday, July 28, 2006, is VACATED.

Dated this 26th day of July, 2006.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge